THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>JOSEPH EARL MELING,<br><br>　　　　　　　　　Defendant. | CASE NO. CR92-0395-JCC<br><br>ORDER |

This matter comes before the Court on Defendant's motion for a sentence reduction (Dkt. No. 473). Having thoroughly considered the briefing and the relevant record, the Court hereby DENIES Defendant's motion for the reasons explained herein.[1]

I.  **BACKGROUND**

Defendant is currently serving a life sentence following his convictions of, among other things,[2] two counts of product tampering that resulted in two deaths and one count of product tampering that resulted in serious bodily injury. (*See* Dkt. Nos. 321, 342.) A jury found beyond a reasonable doubt that Defendant attempted to kill his wife to collect her life insurance policy by poisoning her with a cyanide-laced Sudafed capsule. And to cover up his plan, Defendant laced

---

[1] Defendant also moves for leave to file an overlength reply brief (Dkt. No. 482). Finding good cause, that motion is GRANTED.

[2] Defendant was also convicted of two counts of perjury and three counts of mail fraud. (*See* Dkt. No. 321.)

ORDER
CR92-0395-JCC
PAGE - 1

other Sudafed packages at local stores. Although his wife survived, Defendant's actions resulted in the deaths of Kathleen Daneker and Stanley McWhorter—both of whom ingested Sudafed capsules containing cyanide. (*See generally* Dkt. Nos. 321, 342.)

At sentencing, the parties disagreed as to the applicable sentencing guidelines, which differed in their treatment of product tampering resulting in death. The 1990 guidelines cross referenced U.S.S.G. § 5K2.1, which allowed courts to "increase the sentence above the authorized guideline range" after considering, among other things, "the defendant's state of mind and the degree of planning or preparation," along with "the extent to which death or serious injury was intended or knowingly risked." The 1992 guidelines, on the other hand, directed courts to apply (1) U.S.S.G. § 2A1.1 if the death was caused intentionally or knowingly (first degree murder), mandating a life sentence with a base offense level of 43, or (2) U.S.S.G. § 2A1.2 in any other case (second degree murder), which permitted a sentence less than life and provided a base offense level of 33. Ultimately, the district court found that "its contemplated sentence would not differ depending upon which guideline was applied." (Dkt. No. 372 at 29.) This was because under both the 1990 cross-reference to § 5K2.1 and the 1992 cross-reference to § 2A1.1, an upward departure to a life sentence was appropriate given the degree of "knowing risk" and "premeditation" involved here. (Dkt. No. 372 at 30–31.) The court went on to impose a sentence of life imprisonment. (*See* Dkt. No. 342.)

Defendant, now 62 and having served nearly 32 years of his life sentence, moves for a sentence reduction. (*See* Dkt. No. 473 at 1.) He argues he meets the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i), as articulated by the United States Sentencing Commission in U.S.S.G. § 1B1.13(b)(6), due to changes in decisional law. (*See* Dkt. No. 473 at 1–2.) This includes the Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), which provides that any fact which increases the penalty for a crime beyond the statutory maximum, other than a prior conviction, must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict. *See also Hurst v.*

*Florida*, 577 U.S. 92, 97 (2016) (same). The Government opposes, arguing (1) the Sentencing Commission exceeded its congressionally delegated authority in promulgating § 1B1.13(b)(6), making it invalid, (2) that even if it were valid, Defendant could not establish that the sentence he received is unusually long or grossly disparate to the sentence he might receive today, and (3) that the 18 U.S.C. § 3553(a) factors independently preclude relief. (Dkt. No. 476 at 12.)

## II. DISCUSSION

The Court may reduce a term of imprisonment if extraordinary and compelling reasons warrant a reduction, a defendant has exhausted his administrative rights of appeal with the Bureau of Prisons, and a reduction is consistent with the factors articulated in 18 U.S.C. § 3553(a) and "with applicable policy statements issued by the Sentencing commission." *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. Under the applicable policy statement, "a change in the law . . . may be considered in determining whether the defendant presents an extraordinary and compelling reason . . . where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion [for compassionate release] is filed." § 1B1.13(b)(6).

Here, Defendant argues that, given the changes in decisional law including *Apprendi* and its progeny, he could not be sentenced to life imprisonment if sentenced today. (*See* Dkt. No. 473 at 9–14.) The Court disagrees. As the Government notes, Defendant's argument shows only that, if sentenced today, he could not receive a life sentence *by operation of the cross-reference to the first-degree murder guideline*. (*See* Dkt. No. 476 at 25.) The statute of conviction for Counts 2 and 3, however, permits a life sentence. *See* 18 U.S.C. § 1365(a)(2). And given the aggravated nature of Defendant's crimes, this Court would easily choose to vary upwards to a life sentence. As the sentencing court observed, Defendant's crimes involved an extraordinary degree of planning and preparation, resulted in the deaths of multiple innocent bystanders, and undermined public trust, triggering a nationwide recall and panic about product tampering. (*See* Dkt. No. 372 at 30–31.) Moreover, Defendant's crimes were far more calculated and callous than those in his

cited cases. *See United States v. Beumel*, 522 F. App'x 623, 625 (11th Cir. 2013) (360-month sentence for nurse who tampered with syringes without knowledge that he was infected with Hepatitis C, resulting in one death); *United States v. Courtney*, 362 F.3d 497, 499–500 (10th Cir. 2004) (360-month sentence for pharmacist who diluted chemotherapy drugs to resell the excess, even where deaths did not result). Indeed, Defendant risked the lives of countless strangers in an effort to divert suspicion away from himself when attempting to murder his wife and collect her life insurance. This conduct, in the Court's view, would warrant an upward departure to a life sentence, even if Defendant were sentenced today.

The Court therefore finds that Defendant fails to establish that the sentence he received is grossly disparate to the one likely to be imposed today. And given this conclusion, the Court declines to address the validity of U.S.S.G. § 1B1.13(b)(6) and the application of the 18 U.S.C. § 3553(a) factors.

### III.  CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion a sentence reduction (Dkt. No. 473).

DATED this 18th day of June 2024.

*[signature]*

John C. Coughenour
UNITED STATES DISTRICT JUDGE